UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-20419-CV-MORENO/TURNOFF

MARIA PORTUONDO,

    Plaintiff,

vs.

WAL-MART STORES EAST, LP.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant, Wal-Mart East LP's ("Wal-Mart's") Motion for Summary Judgment **(ECF No. 26)**, and a prior Order of Referral entered by the Honorable Federico A. Moreno. **(ECF No. 29)**. A hearing on this Motion **(ECF No. 26)** took place before the undersigned on Wednesday, November 29, 2017. **(ECF No. 42 )**. Upon review of the Motion, the Response, the Reply, the court file, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

This action was originally filed by Plaintiff, Maria Portuondo ("Plaintiff"), in state court. It was removed to this district on February 1, 2017. **(ECF No. 1)**. The Amended Complaint alleges, among other things, negligence in connection with a trip and fall that took place at a Hialeah Gardens Wal-Mart. Id. Specifically, Plaintiff claims that she tripped and fell over an empty pallet in the store's water aisle. Id. According to Plaintiff, she observed the pallet as she was walking in the aisle. At the time, four employees were loading and unloading water packages from the pallets in that same aisle. Id.

When the incident occurred, there were actually two pallets in the aisle. Rodriguez Dep. 5:17-25; **(ECF No. 26-5)**. One that was empty and stationary, and one that was full and making its way into the aisle. Id. at 6:1-25. Plaintiff claims that she had observed, and moved past, the stationary pallet when an employee in the aisle instructed her to "stop" and "move back." **(ECF No. 1)**. She was startled and became tangled in the stationary pallet. Id. As a result, she claims that she injured her back and shoulder. Id. As shall be summarized below, the Wal-Mart employees' account of the incident differs.

## Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact" and that "[he or she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial responsibility to inform the court of the basis for its motion and to identify the portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Thereafter, to overcome summary judgment, the non-moving party must go beyond the pleadings and set forth specific material facts that remain in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). In this connection, all evidence is viewed in the light most favorable to the non-moving party. Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In sum, summary judgment is improper unless the defendant can establish *unequivocally* the absence of negligence or that the plaintiff's negligence was the *sole* proximate cause of the injury. Tallent v. Pilot Travel Centers, LLC, 137 So.3d 616 (Fla. 2d DCA 2014)(citing Hervey v. Alfonso, 650 So.2d 644, 646 (Fla. 2d DCA 1995))(emphasis added).

Here, as a federal court sitting in a diversity action, the undersigned must apply Florida law to Plaintiff's negligence claim. Rubiano v. Costco Wholesale Corp., Case No: 1:15-cv-24291-UU, 2016 WL 7540571, at *2 (S.D. Fla. Oct. 4, 2016)(citing Bravo v. United States, 577 F.3d 1324, 1325 (11th Cir. 2009)).

### Wal-Mart's Motion for Summary Judgment

Here, Wal-Mart is moving for summary judgment on three grounds: (1) there was no duty to warn; (2) there is no evidence that Wal-Mart maintained its store in an unsafe condition; and (3) the incident was not forseeable. **(ECF No. 26)**. Each argument shall be addressed in turn.

Here, Wal-Mart specifically argues that the subject pallet was only on the floor for a few minutes, and was never left unattended. Id. Along these same lines, Wal-Mart argues that the pallet was never obstructed and was easily observable, as the lights were turned on in the aisle. Id. Wal-Mart suggests that because Plaintiff was aware of the pallet, and had maneuvered past it just moments before her injury, it was open and obvious, and therefore, cannot be inherently dangerous. Id. Further, because it was open and obvious, in Wal-Mart's view, there was no duty to warn. Id.

Wal-Mart also argues that the record is devoid of any prior substantially similar incidents involving customer trip and falls on pallets. Id. In further support of its position, Wal-Mart notes that Plaintiff has been shopping at this location for over fifteen years, as often as 6-7 times per month. Id. In all of that time, Plaintiff, herself, concedes that she has never heard of, or seen, any similar incidents in the store. Id.

Plaintiff, of course, disagrees. In her view, there is overwhelming evidence that suggests that Wal-Mart actually created the dangerous condition that caused her injuries, and failed to warn her regarding same. **(ECF No. 28)**. As noted above, Plaintiff claims that her fall was caused when a

3

Wal-Mart employee "barked at her" to "Stop, go back." Id. Immediately thereafter, she backed up and fell over the pallet. Id. In light of same, she argues that Wal-mart not only created the hazard, but further aggravated same when its employee yelled at her to back up despite him knowing that the pallet was directly behind her. Id.

## Analysis

The first inquiry in a negligence action is whether the defendant owed a duty to the plaintiff. Id. Trainor v. PNC Bank, N.A., 211 S.3d 366, 368 (Fla. 5th DCA 2017). Here, Plaintiff was an invitee. Therefore, Wal-Mart owed her the duty to: (1) use ordinary care in keeping the premises in a reasonably safe condition, and (2) to provide timely warning as to any latent or concealed peril(s) of which it knew or should have known. See Krol v. City of Orlando, 778 So. 2d 490 (Fla. 5th DCA 2001). The "open and obvious" doctrine, however, recognizes that owners and occupiers should be able to assume than invitees will perceive dangers which would be obvious to them through the ordinary use of their own senses. Id. at 493. While the doctrine may discharge an owner of its duty to warn, the duty to maintain the property in a reasonably safe condition, however, remains. Dampier v. Morgan Tire & Auto, LLC, 82 So.3d 204, 206 (Fla. 5th DCA 2012).

The case of Brookie v. Winn-Dixie Stores, Inc., 213 So.3d 1129 (Fla. 3d DCA 2017) is factually parallel to what occurred here, and its ruling is instructive. There, like here, the plaintiff had previously observed the placement of the pallets that caused him to trip. Id. at 1130. In that case, the plaintiff went to a Winn-Dixie store to make a purchase and to obtain empty boxes. Id. In furtherance of same, he made four trips in and out of the store. Id. On the first trip, he took his purchases to his car. Id. On the last three trips, he retrieved empty boxes from the store and transported them to his car. Id. At the same time, a third party was delivering a shipment of beer

4

to the store. Id. The beer was stacked approximately five feet high on a pallet in between the store's entrance and the exit doors. Id. An empty pallet was sitting on the pallet jacks' prongs on the rightside of the exit. Id.

On his third trip, while exiting the store, the plaintiff saw the empty pallet, but tripped and fell over it. Id. He sued Winn-Dixie claiming failure to warn and negligently failing to make the sidewalk safe. Id. During the course of the litigation, the plaintiff admitted having seen the empty pallet when he exited the store. He also admitted that he took four more steps before tripping over it. Id. Because of this, among other things, the court found that Winn-Dixie had no duty to warn the plaintiff of the open and obvious condition, because its knowledge was not superior to the plaintiff's. Brookie, 213 So.3d at 1132 (citing Hunt v. Slippery Dip of Jacksonville, Inc., 453 So.2d 139 (Fla. 1st DCA1984)). Accordingly, summary judgment was entered in Winn-Dixie's favor. In affirming the trial court's ruling, the appellate court noted,

> ...we hold that under these facts, [Winn-Dixie] did not breach [its] duty to exercise ordinary care to maintain the premises in a reasonably safe condition, for either of two reasons: first, that the condition [was] so open and obvious and not inherently dangerous, or second, assuming *arguendo* that the pallet's location was dangerous, it was so open and obvious, and previously observed by [Plaintiff], that [Winn-Dixie] could reasonably expect [Plaintiff] to protect himself from the purported danger.

Brookie, 213 So.3d at 1133.

Here, like there, Plaintiff was aware of the pallet and its place in the aisle. She admitted as much during her deposition. Specifically, she stated,

> Q. And did you see [the pallet] when you walked into – when you first walked in the aisle?
> A. Yes. I avoided it and I passed it with my cart.
>
> Q. Was there any Wal-Mart associate obstructing your view of the pallet when you first walked into the aisle so that you didn't see it when you walked in?

5

> A.  No.

Plf. Dep. 37:6-17; **(ECF No. 26-3)**.

> Q.  When you first approached the pallet did your incident happen immediately upon approaching the pallet?
> A.  No. I avoided it and I went around it because there was a space and I passed it and I was going to pass it just fine.

Id. 37:23-25; 38:1-2.

The only distinction appears to be that in our case, Plaintiff claims that the Wal-Mart employee yelled at her to "go back!" The two Wal-Mart associates that were deposed have denied telling her to "go back." Instead, they both claim that they merely told her to "stop." The relevant testimony is summarized below.

### Plaintiff Maria Portuondo

Plaintiff testified that she has been shopping at the subject Wal-Mart for fifteen (15) years. Plf. Dep. 21:1-15 **(ECF No. 26-3)**. She shops there 6-7 times per month. Id. 21:1-4. Every time she visits the store, she stops in the water aisle. Id. at 36:17-20. Plaintiff conceded that in all of those years, she has never seen, or heard of, another customer trip and fall over a pallet. Id. at 20-25. Plaintiff specifically testified as follows.

> When I went to the aisle, there was a pallet. So with the cart [I] went around the pallet, and as [I] was passing the pallet [I] looked towards where the water was and [I] continued on. When [I] was almost done passing the pallet a worker told [me] to stop and to back up. So [I] stopped and [I] went back and [I] got tangled with the pallet and [I] turned and [I] fell.

Id. at 35:16-23.

> Q.  So did you ultimately pass the pallet?
>
> A.  Yes. I had almost had passed it, I don't remember very well, when the associates told me "Stop, go back," and that's when I got tangled with the pallet, but the cart had already passed it. I know the cart had already passed it.

Id. at 38:3-8.

> Q.  You didn't back up at any point?
> A.  When I had almost passed one associate told me "Stop, go back," and that's when I got tangled with the pallet and I tripped over it and I fell. That's how the fall happened. That was the incident.

Id. at 38:20-25.

> Q.  When you were backing up after – did you say an associate told you to back up? Is that was you said.
> A.  Yes.
>
> Q.  When you were backing up were you looking forward?
> A.  I don't know. I was looking and walking and the man who told me – I was looking straight – I was just thinking what else do I need, what else do I need to do, and all of a sudden he told me "Stop go, back," so I went back.

Id. at 39:1-10.

**Luis Rodriguez**

Rodriguez has been a Wal-Mart associate for approximately nine (9) years. Rodriguez Dep. 3:1-19. **(ECF No. 26-5)**. He has worked as a "support manager" for the last six (6) years. Id. He describes the incident as follows.

> An empty pallet [was] being removed from the shelf where its supposed to be. [It is] being taken out from there [in order to] put in the other pallet [correctly]. Then the [Plaintiff] comes over [and] she was told to wait for a moment because the full pallet [was] coming over.

Id. at 5:1-25.

> He's coming with the guys pushing the full pallet and the [Plaintiff] is [trying] to cross and she was told to wait. She keeps going but when she sees that she can't keep going because the full pallet is coming down, she goes back turning towards the empty pallet and there she bumped into it and fell with [sic] a pallet.

Id. at 6:1-7.

In sum, Rodriguez recalled that there were four (4) associates working the aisle when the

incident happened. Id. at 8:22-25. He explained that pallet jacks are used to load and unload the pallets and that there is always an associate present. In other words, the pallet jack is never left alone. Id. at 11:10-12. The process is completed within minutes. Here, the empty pallet that was on the floor had only been there for about two minutes when Plaintiff fell. Id. at 24:1-12. He repeatedly warned Plaintiff to stop, but she ignored them and kept going forward anyways. Id. at 13:1-14; 22-1-16. Rodriguez further denies that he or any other associate ever told Plaintiff to back up. Id. at 22:1-9. He claims he only instructed her to stop. Id.

Specifically, Rodriguez testified as follows.

> Q. And as she proceeded down the aisle, you warned her again to stop and not proceed down the aisle, is that correct?
> A. Yes.

Id. at 22:13-16.

> Q. Did the plaintiff at some point start to backup while she was in the aisle?
> A. Yes.
>
> Q. Did you instruct her plaintiff to back up?
> A. No.
>
> Q. In fact, isn't it true [that] you warned her to stop and not to proceed down the aisle?
> A. Yes.

Id. at 22:1-25.

Of equal importance, Rodriguez first observed Plaintiff proceed down the aisle and pass the empty pallet. Id. 23:1-25. She was able to navigate past it with no trouble at all and proceed down the aisle. Id. He further testified that there were no obstructions and the empty pallet was readily observable. Id. He has never heard of, or witnessed, any other customers tripping and falling over pallets during his tenure at Wal-Mart. Id. at 16:10-18.

8

**Jhonatan Sanchez**

Sanchez has likewise worked at the subject Wal-Mart for nine (9) years. Sanchez Dep. 6:1-9). **(ECF No. 26-4)**. He also works as a support manager. Id. He likewise testified that the pallet removal process takes mere minutes. Id. at 7:1-14. Like Rodriguez, he testified that he warned Plaintiff to stop and not to continue down the aisle, because the pallet was coming into the aisle. Id. at 8:7-20.; 23:7-10. Like Rodriguez, Sanchez testified that despite the warning, Plaintiff proceeded to enter the water aisle. Id. at 9:1-2. Like Rodriguez, Sanchez testified that he warned Plaintiff a second time. Id. Immediately before the incident, he saw Plaintiff backing up. Id. at 10:1-8. He denies ever telling Plaintiff to backup, and did not observe any Wal-Mart associates instructing her to do so. Id. at 10:6-13; 21:1-3. Like Rodriguez, Sanchez also observed Plaintiff navigating around the empty pallet as she made her way into the aisle. Id. 10:15-18. He likewise testified that the pallet was easily observable and unobstructed. Id. 11:1-10; 12: 1-12. Prior to this incident, he had never seen, or heard of, another customer tripping and falling over an empty pallet on the floor. Id. 6:21-25; 7:1-2.

Consistent with the record evidence in this case, the undersigned finds that the condition was open and obvious. Further, Wal-Mart, through its associates, provided Plaintiff with more than one warning. However, as reflected above, there does appear to be a genuine dispute as to the exchange between Plaintiff and the Wal-Mart associates. Accordingly, this Court cannot find, on this record, that Plaintiff's own negligence was the *sole* proximate cause of her injuries. In other words, what was actually communicated to Plaintiff makes a big difference. Here, it is not clear whether she was told to "stop" or "stop and back up." Further, in the pleadings, Plaintiff implies that the Wal-Mart associates "barked" or yelled at her. If, in fact, Plaintiff was actually startled and directed to "back

up," her instinct may have caused her to follow instructions and back up despite being aware of the pallet. Because of this, the undersigned finds that summary judgment is inappropriate.

Consistent with the above, it is **RESPECTFULLY RECOMMENDED** that Defendant's Motion for Summary Judgment **(ECF No. 26)** be **DENIED**.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this 18th day of December 2017.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:   Hon. Federico A. Moreno
      Counsel of Record